UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JEREMY GALLANT,                        Civil Action No. 1:14-cv-199

     Plaintiff,                                Dlott, J.
                                            Bowman, M.J
     vs.

DR. FAISAL AHMED, *et al.*,

     Defendants.

### REPORT AND RECOMMENDATION

Plaintiff, an inmate at the Southern Ohio Correctional Facility, proceeding *pro se* and *in forma pauperis*, has filed a civil complaint pursuant to 42 U.S.C. § 1983. (Doc. 1).

On March 26, 2014, Plaintiff filed a Complaint (Doc. 3) alleging Eighth Amendment claims against the Defendants Dr. Faisal Ahmed, ODRC Director Gary Mohr, Deputy Warden Mr. Cadogan, Institutional Inspector Mrs. Mahlman, and ODRC Medical Services employees Ms. Clagg, Mr. Hankins, and Mona Parks for: "denial of medical treatment to address both old and new injuries" (Doc. 3, p. 5); discontinuation of medication by Defendant Dr. Ahmed; inadequate medical treatment of collective Defendants; and retaliatory actions taken by either the collective Defendants, or by unidentified individuals. *Id.* Against Dr. Ahmed, Plaintiff specifically alleged a refusal to treat his serious back condition; against Mr. Hankins, Quality Improvement Coordinator ("QIC"), Plaintiff alleged a refusal to intervene on his behalf; against Mr. Cadogan, Deputy Warden, Plaintiff alleged Mr. Cadogan allowed Dr. Ahmed to refuse him medical treatment; against Mona Parks, RN, Assistant Chief Inspector (Medical),

Plaintiff alleged a failure to acknowledge his serious medical condition; and against Gary Mohr, Director of the Ohio Department of Rehabilitation and Correction ("ODRC"), Plaintiff alleged allowance of the above purported violations to continue. *Id.*

On May 5, 2014, the District Judge adopted the Magistrate Judge's Report and Recommendation ("R&R"), dismissing Plaintiff's claims against Director Mohr, Deputy Warden Cadogan and Institutional Inspector Mrs. Mahlman, for failure to state a claim against 3 individuals. (Doc. 4,). On November 17, 2014, the Court accepted as filed, Plaintiff's September 24, 2014, Amended Complaint. (Docs. 35, 43).

Within the Amended Complaint and as against the remaining Defendants, Plaintiff alleges medical deliberate indifference as it pertains to purported spinal cord injuries. Plaintiff also alleges that Defendant Dr. Ahmed refused him medical care and/or medication for this condition. In addition to medical deliberate indifference, Plaintiff alleges acts of retaliation for being on a hunger strike from May 15, 2014, until August 1, 2014, in protest for not receiving medical attention for his back. (Doc. 35).

Defendants now move for summary judgment, asserting *inter alia*, that they acted reasonably under the circumstances and are therefore entitled to qualified immunity. Defendants also contends that they are entitled to judgment as a matter of law on the claims upon which Plaintiff failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA") of 42 U.S.C. § 1997e(a).The undersigned agrees.

I. **Background and Facts**

On July 19, 2013, Plaintiff was transferred from the Ohio State Penitentiary ("OSP") to the Southern Ohio Correctional Facility ("SOCF") due to his security level

and mental health exclusionary criteria, which prohibited him from remaining at the Ohio State Penitentiary. (Doc. 165, Exhibit B). On this same date, Plaintiff was examined and he was found to be in no distress, had no injuries, concerns, or comments. (Doc. 165, Exc. C & D).

On July 24, 2013, Plaintiff underwent his transfer examination with SOCF physician, Dr. Faisal Ahmed, M.D. At the onset, Plaintiff was advised that there was no medical need for analgesics stronger than non-steroidal anti-inflammatories ("NSAIDs") such as Ibuprofen and Tylenol, which he could obtain over the counter, in the commissary. (Doc. 165, Exhibit C, pp. 1-2).

Plaintiff became angry and instructed Dr. Ahmed that he "would replace [his order] with what the doctors at OSP gave [him]." *Id.* When Dr. Ahmed refused Plaintiff's request and instead advised him to try the NSAIDs and follow up with him in two weeks, Plaintiff became aggressive, asserting that Dr. Ahmed must be a "newly licensed doctor" or a "nurse" or "some other person," before yelling "Fuck you" and leaving the examination room. (Id., Exhibit E, Declaration of Dr. Ahmed, ¶ 6).

Plaintiff was examined again on August 6, 2013, whereupon, Dr. Ahmed noted "no acute distress, and in reviewing the x-rays and CT scan, finds no abnormalities demonstrating a medical need for either Ultram or synthetic narcotics." (Doc. 165, Exhibit C, IPN, p. 3 of 7). On August 20, 2013, Plaintiff was again examined, this time for complaints of "foot pain, leg pain, back pain, thoracic pain, and neck pain." (Doc. 165, Exhibit C, IPN, p. 4 of 7). Upon examination, Dr. Ahmed found that Plaintiff's complaints of pain did not correlate with the palpitation examination, and that a review of the x-rays "did not present with any degenerative joint disease, and only minor T10

to T12 narrowing." *Id.* Dr. Ahmed concluded that Plaintiff was "malingering" and "drug seeking." (Id., Declaration of Dr. Ahmed, Exhibit E, ¶ 8).

On May 19, 2014, Plaintiff presented into the medical department with complaints of a "right knee injury" and requested narcotic pain medication. (Doc. 165, Exhibit C, IPN note, p. 5 of 7). Within this note, Plaintiff asserts that he was unaware he had sustained a back injury during a 2010 motor vehicle collision, until he "got to OSP." *Id.* Within the medical record it is depicted that Plaintiff claimed he was treated for this back injury at OSP with Ultram, but that SOCF would not provide that medication to him. *Id.* Dr. Ahmed reviewed Plaintiff's back xray and found it normal, prescribed the analgesic Naprosyn and ordered an x-ray of Plaintiff's knee, "because he requested it." (*Id.*, Declaration of Dr. Ahmed, Exhibit E, ¶ 9).

At this appointment, Plaintiff alleges that Dr. Ahmed forcefully grabbed his right leg in a very aggressive manner, and twisted and turned his right leg, causing Plaintiff excruciating pain, all before writing a false medical log at the conclusion of Dr. Ahmed's evaluation. (Doc. 35).

The next day, May 20, 2014, Plaintiff requested and was again seen by Dr. Ahmed. (Doc. 165, Exhibit C, IPN note, p. 6 of 7). Plaintiff requested that Dr. Ahmed prescribe him Neurotin, which in adults is used to treat nerve pain caused by herpes virus or shingles. (*Id.,* Declaration of Dr. Ahmed, Exhibit E, ¶ 11). Plaintiff threatened to go on a hunger strike if Dr. Ahmed continued to refuse to prescribe him with his drug of choice. *Id.*

Thereafter, Plaintiff began his hunger strike on or around May 19, 2014. Dr. Ahmed, in accordance with the Ohio Department of Rehabilitation and Correction's

("ODRC") Hunger Strike protocol, implemented policy 68-MED-17. (See Doc. 165, Exhibit F, Hunger Strike policy). In accordance with the Hunger Strike policy, medical staff, *inter alia*, commenced obtaining orthostatic blood pressures, whereby they monitored his blood pressure in the supine and upright positions, in order to be assured he was maintaining appropriate vascular pressures. (Doc. 165, Exhibit G; Ex. E, Declaration of Dr. Ahmed,¶ 12). In addition, a Hunger Strike Log was maintained, whereby medical staff were required to document meals being offered three times a day to the Plaintiff, whether he accepted the same, and any comments he made. (Doc. 165, Exhibit H, Hunger Strike Log).

Plaintiff, however, alleges Dr. Ahmed had him transferred to the Medical Infirmary for monitoring for his hunger strike. *Id.* As a result of this transfer, Plaintiff claims he was stripped of all of his personal belongings, including his legal documents, before being placed in a filthy and disgusting cell, to wit: Medical Isolation Cell – 20, which likened to a "Russian torture chamber." (Doc. 35, PAGEID #: 142). Plaintiff asserts that after five (5) days, he was transferred to a regular cell in the infirmary. Id. As a result of spending five (5) days in Medical Isolation Cell – 20, Plaintiff claims he sustained "significant signs of kidney damage/failure." (Id.). On May 24, 2014, Plaintiff alleges that he experienced "light-headedness" as a result of "low blood sugar" due to his hunger strike. *(Id.,* PAGEID #: 143). Plaintiff takes issue with Dr. Ahmed's purported lack of compassion when advising him to end his hunger strike. *Id.*

The medical records indicate that Plaintiff's overall health remained stable. In any event, on June 12, 2014, he was transferred to the Franklin Medical Center

5

("FMC"). (Doc. 165, Exhibit I, Nursing Note.) Within the FMC Nursing note, Plaintiff stated that he was on the "hunger strike to get medical attention from the institutional doctor," and that he "had a lawsuit against him." *Id.* In addition, it was noted that Plaintiff was alert, oriented to person, place and time, calm, cooperative, his lungs were clear to auscultation, his skin turgor was good, his gait was steady, and that he only required education as to the risks of not consuming satisfactory amounts of fluids and food. (Id.).

On August 12, 2014, Plaintiff returned from FMC. (Doc. 165, Exhibit C, IPN note, p. 7 of 7 (Id., Exhibit E, Dr. Ahmed Declaration, ¶ 13).

Upon return to SOCF, Plaintiff claims Dr. Ahmed discontinued the vitamins and liquid nutrients Plaintiff received at FMC while he was on his hunger strike, for retaliatory reasons. (Doc. 35, PAGEID #: 146).

As of August 20, 2014, Plaintiff relayed to Dr. Ahmed that he had eaten food and terminated his hunger strike, stating "it's too hot for him to do a hunger strike." (*Id.* IPN note, p. 7 of 7). Plaintiff continues to present with both threatening and disparaging conduct towards medical staff in the hopes that he will receive narcotic type drug prescriptions. (Doc. 165, Exhibit E, Dr. Ahmed Declaration, ¶ 14).[1]

**II.  Analysis**

**A. Standard of Review**

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine dispute as to any material fact and

---

[1] Recently on March 12, 2015, Plaintiff, when he was refused a prescription of his drug of choice, openly assaulted Dr. Ahmed, by head-butting him and attempting to bite his hands, arm and face. (Doc. 165, Exhibit J, Conduct Report and Medical Examination Report; Exhibit E, Declaration of Dr. Ahmed, ¶ 14).

6

the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 24748, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party must demonstrate the absence of genuine disputes over facts which, under the substantive law governing the issue, could affect the outcome of the action. *Celotex Corp.,* 477 U.S. at 323.

In response to a properly supported summary judgment motion, the non-moving party " 'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.' " *Harris v. Adams,* 873 F.2d 929, 931 (6th Cir.1989) (quoting *Sixty Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987)). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Satterfield v. Tennessee,* 295 F.3d 611, 615 (6th Cir.2002); *Little Caesar Enterprises, Inc. v. OPPC, LLC,* 219 F.3d 547, 551 (6th Cir.2000).

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *Street,* 886 F.2d at 1478 (citing *Celotex* and *Anderson* ). A principal purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex,* 477 U.S. at 323–24. The moving party need not support its motion with evidence disproving the opposing party's claims. Rather, the moving party need only point out there is an absence of evidence supporting such claims. *Hartsel v. Keys,* 87 F.3d 795, 799 (6th

Cir.1996) (citing *Celotex Corp.,* 477 U.S. at 325). Nor must the Court search the entire record for material issues of fact. *Street,* 886 F.2d at 1479–80. The court need only determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. Defendants motion for Summary Judgment

Defendants' maintain that Plaintiff's claims fail as a matter of law because he has offered no objective evidence to support his version of the facts. Defendants further contend that they are entitled to qualified immunity because there was no clear violation of a constitutional right. Plaintiff asks the Court to deny Defendants' motion, asserting that genuine issues of material fact exist thereby precluding summary judgment. Upon careful review, the undersigned finds that Defendants' motion for summary judgment is well-taken and should be granted.

*1. Deliberate Indifference*

To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States and (2) that the deprivation was caused by a person acting under color of state law. *Sigley v. City of Parma Hts.,* 437 F.3d 527, 533 (6th Cir.2006) (citing *West v. Atkins,* 487 U.S. 42, 48 (1988)).

Here, Plaintiff's complaint alleges that Defendants failed to provide him with

8

adequate medical care and/or medication for this condition. Such claims implicate the Eighth Amendment prohibition against "cruel and unusual punishments." U.S. Const. amend. VIII; *see also Farmer v. Brennan,* 511 U.S. 825 (1994). Plaintiff must establish that he was deprived of medical care so necessary that the failure to provide such care deprived him of his rights under the Eighth Amendment. *Cairelli*, 80 F. App'x at 983 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1990)).

Proof of deliberate indifference under the Eighth Amendment includes separate objective and subjective components, with a standard that exceeds gross negligence and has been described as akin to "criminal recklessness." *Weaver v. Shadoan,* 340 F.3d 398, 410 (6th Cir.2003). With respect to the objective component, Plaintiff must prove that the alleged deprivation of medical care is "objectively, sufficiently serious," such that he was denied "the minimal civilized measure of life's necessities." *See Farmer v. Brennan,* 511 U.S. 825, 834 (1994). The failure to provide care or the delay in care must have exposed Plaintiff to a "substantial risk of serious harm." *Id.* at 828. Second, to prove the subjective element of his claim, Plaintiff must show that the prison officials actually knew of and disregarded "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.,* 511 U.S. at 837.

To establish deliberate indifference, a plaintiff must show more than mere negligence or the misdiagnosis of an ailment. Id. Deliberate indifference describes a state more blameworthy than negligence. *Farmer*, 511 U.S. at 835. A prisoner "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to

9

serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Allegations of negligence in diagnosing or treating medical conditions are not actionable under 42 U.S.C § 1983. Id.; *Byrd v. Wilson*, 701 F.2d 592, 595 n.2 (6th Cir. 1983); *Westlake v. Lucas*, 537 F.2d 857, 860–61 n.5 (6th Cir. 1976). An allegation of inadvertent failure to provide adequate medical care or of a negligent diagnosis simply fails to state a cause of action. *Selby v. Martin,* 84 F. App'x 496, 499 (6th Cir. 2003). Under an Eighth Amendment claim for cruel and unusual treatment, a prison official is only held liable for denying humane conditions of confinement, including proper medical care, if "he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

Where an inmate has received medical attention, and merely disputes the adequacy of that treatment, federal courts are reluctant to second-guess the medical judgments of prison officials and constitutionalize claims that sound in state tort law. *See Westlake v. Lucas,* 537 F.2d 857, 860 n. 5 (6th Cir.1976) (differences in judgment between an inmate and medical personnel regarding appropriate treatment are not enough to state a deliberate indifference claim). Plaintiff must show that each of the Defendants was aware of facts from which he or she could draw the inference that a substantial risk of serious harm existed, and that he or she actually drew that inference. Plaintiff must prove both elements of his claim by a preponderance of the evidence. *Brooks v. Celeste,* 39 F.3d 125, 127–128 (6th Cir.1994).

In this case, Defendants are entitled to summary judgment based upon Defendants' demonstration that Plaintiff cannot prove either the objective or subjective components of a constitutional violation, as opposed to a mere claim for negligence or

10

malpractice. As noted by Defendants, Plaintiff has not proffered any evidence that he suffers from a degenerative disc condition warranting more than over the counter NSAIDs, as recommended by Defendant Dr. Ahmed. (Doc. 165, Exhibit E, Declaration, Dr. Ahmed, ¶ 5).

Notably, Plaintiff claims that pre-existing spinal cord injuries to his Thoracic 10 to Thoracic 12 vertebrae caused him severe pain on a daily basis. (Doc. 35). Plaintiff claimed that Defendant Dr. Ahmed committed constitutional violations because he would not prescribe his medication of choice. *Id*. However, the medical records indicate that Plaintiff did not suffer from a serious medical condition warranting narcotic type medications. As outlined above, Plaintiff's medical records clearly establish that Plaintiff received frequent and regular medical care. The law is clear that [w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham,* 358 F.3d at 385 (quoting *Westlake,* 537 F.2d at 860 n. 5). A doctor's failure to provide a specific treatment does not state a constitutional claim of deliberate indifference. *Mabry* 289 F. App'x at 902.

*2. First Amendment Retaliation Claim*

Next, Plaintiff alleges that Defendants retaliated against him due to his hunger strike. In this regard, Plaintiff contends that Dr. Ahmed refused to prescribe his medications of choice. Plaintiff further contends that Dr. Ahmed, along with HCA Clagg, QIC Hankins and Assistant Chief Inspector Parks retaliated against him by denying him medical care and/or by failing to carry out their duties and responsibilities regarding the inmate grievance process. (Doc. 35). In addition to the named Defendants, Plaintiff

makes claims of retaliation against unidentified correctional staff, *inter alia,* in the mail department, institutional inspector's office, and administration offices. *Id.* Plaintiff's claims fail as a matter of law.

To state a retaliation claim, a plaintiff must allege three elements: (1) that he or she was engaged in protected conduct; (2) and adverse action was taken against him or her that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Retaliation claims must include a "chronology of events from which retaliation may plausibly be inferred." *Ishaag v. Compton*, 900 F.Supp. 935 (W.D. Tenn. 1995), quoting Cain v. Lane, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988). It is well established that retaliation is easy to allege and that it can seldom be demonstrated by direct evidence. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state ... a claim under §1983.'" *Harbin–Bey*, 420 F.3d at 580, quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of a retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001)("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims").

Here, Plaintiff alleges that he was retaliated against for his hunger strike from May 15, 2014, through August 1, 2014.  Plaintiff purportedly began the hunger strike because Dr. Ahmed would not prescribe narcotic medications for his alleged pre-existing back pain in July 2013.   Plaintiff alleges the retaliation began a year later during a May 19, 2014 scheduled appointment with Dr. Ahmed.  At that time, Plaintiff presented to Dr. Ahmed complaining of a knee injury sustained in his cell. Plaintiff alleges that during the appointment, Dr. Ahmed forcefully grabbed his right leg in a very aggressive manner, and twisted and turned his right leg, causing Plaintiff excruciating pain.  Plaintiff further contends that Dr. Ahmed then completed a false medical log. Plaintiff, however, provides no admissible evidence or objective findings in support of these allegations.  Plaintiff also contends that Dr. Ahmed's failure to prescribe him narcotic medication was done so in retaliation for his hunger strike.

However, as detailed above, Plaintiff did not suffer from a serious medical condition warranting narcotic type medications.  In light of the foregoing, Defendants are entitled to judgment as a matter of law with respect to Plaintiff's retaliation claims.[2]

*3. Qualified Immunity*

The purpose of qualified immunity is to provide governmental officials with the ability to reasonably "anticipate when their conduct may give rise to liability for damages." *See Anderson v. Creighton,* 483 U.S. 635, 646 (1987) (internal quotation omitted). Thus, a governmental official performing discretionary functions will be

---

[2] Furthermore, Plaintiff has failed to demonstrate that Defendants HCA Clagg or QIC Hankins had any awareness of complaints Plaintiff had made or grievances he had filed against Dr. Ahmed. Additionally, with respect to Assistant Chief Inspector Parks, Plaintiff has failed to assert any allegations against her in his Amended Complaint, and thus has failed to allege a constitutional violation against this named Defendant. Moreover, Plaintiff has failed to assert any specific wrongdoing by any of the named Defendants (with the exception of Dr. Ahmed, as detailed above).

entitled to qualified immunity unless his or her actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818. A governmental official is entitled to immunity if the facts alleged do not make out a violation of a constitutional right, or if the alleged constitutional right was not clearly established at the time of the defendant's alleged misconduct. *See Pearson v. Callahan,* 555 U.S. 223 (2009). Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial. *Saucier v. Katz,* 533 U.S. 194, 200–201, (2001). The doctrine is intended to balance the following competing interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably ." *Pearson,* 555 U.S. at 231.

Qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.' " *Hunter v. Bryant,* 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs,* 475 U.S. 335, 343, 341 (1986)); *see also Dorsey v. Barber,* 517 F.3d 389, 394 (6th Cir. 2008). Qualified immunity applies regardless of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson,* 555 U.S. at 231.

Here, as stated above, Plaintiff's medical records clearly establish that Plaintiff received frequent and regular medical care. As such the undersigned finds that Defendants are entitled to qualified immunity because Plaintiff has not shown either a constitutional violation or that defendants actions were "objectively unreasonable" in

light of clearly established law. *See Dickerson v. McClellan,* 101 F.3d 1151, 1157–1158 (6th Cir.1996); *see also McCloud v. Testa,* 97 F.3d 1536, 1542 (6th Cir.1996) (finding that the burden of disproving qualified immunity rests with the plaintiff).

### C. Plaintiff's motions for summary Judgment

Plaintiff has also filed motions for summary judgment asserting that he is entitled to judgment as a matter of law. (Docs. 149, 171). Plaintiff's motions, however, contain no evidentiary support and consist of conclusory allegations and general assertions. See Fed. R. 56 ("Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law). Furthermore, for the reasons detailed above, Defendants are entitled to judgment as a matter of law with respect to Plaintiff's claims, thereby necessitating that Plaintiff's motions for summary judgment are not well-taken and should be denied.[3]

---

[3] Defendants also contend that Plaintiff's claims fail as a matter of law because he failed to exhaust his administrative remedies. The Prison Litigation Reform Act of 1995 ("PLRA") prohibits an inmate from bringing a 42 U.S.C. § 1983 action "until such administrative remedies as are available are exhausted." *Jones v. Bock,* 549 U.S. 201, 204 (2007). It is well settled that "exhaustion is mandatory under the PLRA and unexhausted claims cannot be brought in court." *Jones,* 549 U.S. at 211 (citing *Porter v. Nussle,* 534 U.S. 516, 524 (2002)); "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules procedures as determined by "the prison requirements, and not the PLRA . . ." *Jones v. Bock*, 549 U.S. 199, 218 (2007). In Ohio, grievances must go through a three-step procedure detailed in Ohio Adm. Code 5120-9-31(K). Here, as detailed above, the Chief Inspector specifically found that Plaintiff failed to timely complete the third and final step of the mandatory grievance process regarding his claim against Defendant Dr. Ahmed. (Doc. 165, Exhibit A, p. 2). Notably, Defendant Assistant Chief Mona Parks established that Plaintiff did not file his appeal of the Institutional Inspector's July 9, 2014, decision to the Chief Inspector's office until September 11, 2014, which was approximately six (6) weeks late, under Ohio Adm. Code § 5120-9-31(K)(3), and which is well outside the fourteen (14) day deadline.

### III.     Conclusion

For these reasons, it is therefore **RECOMMENDED** that Defendants' motion for summary judgment (Doc. 165) be **GRANTED**; Plaintiff's motions for summary judgment (Docs. 149, 171) be **DENIED**; all remaining pending motions (Docs. 174, 178, 180, 181, 191, 192, 193, 194, 195, 196, 198, 200, 202, 204, 209) be **DENIED as MOOT** and this matter **TERMINATED** on the active docket of the Court.

>   *s/*Stephanie K. Bowman
> Stephanie K. Bowman
> United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| JEREMY GALLANT, | Civil Action No. 1:14-cv-199 |
| Plaintiff, | Dlott, J. |
| vs. | Bowman, M.J |
| DR. FAISAL AHMED, *et al.*, | |
| Defendants. | |

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).